J-A26038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARNEY | : | |
| | : | |
| Appellant | : | No. 2999 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0002644-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARNEY | : | |
| | : | |
| Appellee | : | No. 3105 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0002644-2019

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 16, 2024**

Appellant, Daniel Carney, and Cross-Appellant, the Commonwealth of Pennsylvania, appeal from the judgment of sentence entered in the Monroe County Court of Common Pleas, following Appellant's jury trial convictions for attempted sexual assault, aggravated indecent assault, simple assault, and

indecent assault.[1]  We affirm.

The relevant facts of this appeal are as follows.  For Labor Day weekend in 2019, Appellant gathered with friends and family at the Shawnee Inn. Appellant was scheduled to marry his fiancée, Nicole Norris,[2] on Sunday, September 1, 2019, and the wedding party had several events planned throughout the weekend.  On Friday, August 30, 2019, Appellant, Ms. Norris, and members of the wedding party spent the afternoon rafting, paddleboarding, and consuming alcohol on the Delaware River.  One of the bridesmaids, R.F. ("Victim"), became intoxicated.  The trial court described what happened next:

> [Victim] stated that on the date of the incident, after consuming some beer and a shot of vodka she was feeling the effects of intoxication.  After leaving the river trip, the victim was standing in the parking lot of the Shawnee Inn and she was cold.  The victim wanted to go inside to get warm and [Appellant] led her inside.  Then she remembers [Appellant] tell[ing] her that she was beautiful and trying to touch her.  [Appellant] then "came onto" her harder and kissed her.  After that the victim lost consciousness.  She awoke to [Appellant] biting her nipple and she immediately pushed him away.  [Appellant] was pulling her and pulled her down on top of him.  Although she was trying to pull away, the victim was being held down by her shoulders and arms.  At some point the victim's top and bottom of her bathing suit were off and [Appellant] was touching her in her vagina and telling her to relax.  [Appellant] penetrated

_____

[1] 18 Pa.C.S.A. §§ 901(a), 3125(a)(1), 2701(a)(1), and 3126(a)(1), respectively.

[2] Throughout the record, Ms. Norris is also referred to as "Nicole Carney" in references to events that occurred after the wedding.  To be consistent, we refer to her only as "Ms. Norris" in this memorandum.

her vagina with his finger. He was rubbing himself on her and actually touching her vagina. At that point the victim hit her head on the wall behind [Appellant] and lost consciousness.

The next thing she heard was [Ms. Norris] screaming his ([Appellant's]) name. At this point, the victim was on top of [Appellant]. The victim testified that she was very upset and she felt very violated. She stated that she was not aware of what happened….

(Opinion and Order Denying Post-Sentence Motions, filed 11/4/22, at 11-12) (record citations omitted).

Victim came to realize that Appellant had taken her inside the men's locker room at the resort. At some point, Ms. Norris entered the locker room, discovered Victim and Appellant, and quickly exited. As Appellant began to button his pants, the maid of honor entered the locker room, "grabbed [Appellant] and pushed him out." (N.T. Trial, 5/9/22, at 76). The maid of honor encouraged Victim to "stay here," but Victim proceeded out into the hallway. (*Id.* at 78). Another member of the wedding party, Beau Norris, ultimately transported Victim to his house where she spent the night.

On Saturday, August 31, 2019, Victim woke up feeling sore. Nevertheless, Victim continued to participate in wedding events, including the rehearsal dinner. At the dinner, Victim overheard other guests discussing what had transpired in the locker room the day before. Because her recollection was hazy, Victim went to the resort's security department to inquire about surveillance footage from the hallway leading to the locker room. Security personnel recovered the surveillance video and reviewed it with

Victim. The video confirmed that Appellant and Victim walked down the hallway leading to the men's locker room. Victim was "extremely unsteady on her feet and swaying." (Affidavit of Probable Cause, dated 10/3/19, at 2). Just before they reach the locker room, Appellant "is observed turning around and pulling the victim into the locker room." (*Id.*)

On Sunday, September 1, 2019, the wedding ceremony proceeded as planned. Hours before the ceremony, however, Appellant sent the following text message to Victim:

> … I want to apologize again for everything, can we please just be happy as possible for [Ms. Norris] today, mistakes are behind us and I just need total closure before I do this, this is why I'm sending this, I'm as happy as ever to marry [Ms. Norris].

(N.T. Trial, 5/9/22, at 119). The message continued:

> I know this is terrible as well, but my dick was out in the shower, we never did do it, but would you consider taking Plan B to make damn certain just in case, there is almost no chance but still, please tell me yes, I'm begging you.

(*Id.* at 121-22).

Victim later explained that prior to receiving these text messages, she "thought [Appellant] had only tried to kiss me[.]" (*Id.* at 123). After receiving these texts, however, Victim believed that Appellant "had done something in violation of me, I just didn't know what." (*Id.*) Later that night, after the wedding had ended, Victim went to Lehigh Valley Hospital—Pocono for a sexual assault forensic examination ("SAFE"). The emergency room physician and a SAFE nurse both examined Victim and observed bruising and abrasions

on Victim's body. Thus, the physician diagnosed Victim as having suffered a

sexual assault. (***See*** N.T. Trial, 5/10/22, 30).

The trial court set forth the subsequent procedural history of this appeal

as follows:

> After an investigation, the Commonwealth filed its criminal complaint against [Appellant] on October 3, 2019. Arraignment occurred on [December] 11, 2019 after which [Appellant] filed his omnibus [pretrial] motion on January 9, 2020. A hearing on that motion was held on February 18, 2020. The court directed the parties to file briefs on the matter within 30 days of receipt of the transcript of the February 18, 2020 hearing. The transcript was completed on March 2, 2020 so briefs on [Appellant's] omnibus [pretrial] motion were initially due on April 1, 2020. However, the court granted the Commonwealth's March 1[7], 2020 motion to extend the deadline for filing briefs until April 20, 2020.
>
> Notably, on March 16, 2020, the Pennsylvania Supreme Court issued an order declaring a general, statewide judicial emergency due to the emergence of the Covid-19 pandemic. ***In re General Statewide Judicial Emergency***, 228 A.3d 1281 (Pa. 2020). The order provides that the president judges of the various judicial districts "SHALL HAVE THE AUTHORITY to suspend the operation of Rule of Criminal Procedure 600 within a judicial district." ***Id.*** (capitalization in original). The Supreme Court further explained that "[t]he purport of the suspension will be that the time period of the local judicial emergency … shall be excluded from the time computation under Rule of Criminal Procedure 600(c)." ***Id.***
>
> That same day, on March 16, 2020, President Judge Patti-Worthington declared a judicial emergency until April 14, 2020 pursuant to the Supreme Court's order. In her order Judge Patti-Worthington declared that "[t]he operation of Rule of Criminal Procedure 600 shall be suspended in the 43rd District during the period of the local judicial emergency." ***In re 43rd Judicial District Declaration of Judicial Emergency***, No. ____ M 2020 (Mar. 16, 2020).

On April 1, 2020, the Supreme Court issued its second supplemental order to the March 16, 2020 declaration of judicial emergency. In that order, it extended the deadline of all filings due between March 19, 2020 and April 30, 2020, until May 1, 2020. [Appellant] timely filed his brief in support of [the pretrial] motion on April 20, 2020, but the Commonwealth did not file its brief against the motion.

President Judge Patti-Worthington extended the March 16, 2020 Declaration of Judicial Emergency ("DJE") in a number of subsequent orders. The April 1, 2020 order extended the suspension of Rule 600 to April 30, 2020. Then, on April 22, 2020, President Judge Patti-Worthington further extended the suspension until May 31. Regarding Rule 600, the April 22, 2020 order stated:

> Any postponement caused by this Judicial Emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Pennsylvania Rule of Criminal Procedure 600.

The March 16, 2020 DJE was further extended to September 7, 2020, through a May 29, 2020 order. That order provides that "Pennsylvania Rule of Criminal Procedure 600 is suspended subject to constitutional requirements." A subsequent order on September 2, 2020 extended the March 16, 2020 DJE until January 4, 2021. The final extension of the suspension of Rule 600 was enacted by the December 3, 2020 order. That order extended the March 16, 2020 DJE until June 30, 2021. Concerning Rule 600 it stated that:

> Pennsylvania Rule of Criminal Procedure is SUSPENDED subject to Constitutional limitations. Any postponement caused by this Judicial Emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Pennsylvania Rule of Criminal Procedure 600.

On July 21, 2020, [Appellant] filed a supplemental *habeas* motion in response to the Pennsylvania Supreme Court's

- 6 -

decision in **Commonwealth v. McClelland**[, 660 Pa. 81, 233 A.3d 717 (2020)]. The court ordered a hearing on [Appellant's] motion on September 25, 2020, but the Commonwealth requested a continuance of that hearing on September 23, 2020. Over [Appellant's] objection, the court granted that motion and scheduled a new hearing on October 30, 2020. Following the October 30, 2020 hearing, the court ordered that briefs be filed within 30 days of the hearing transcript being filed. The transcript was filed on November 19, 2020 and both [Appellant] and the Commonwealth timely filed their briefs within 30 days. On March 26, 2021, the court entered its order denying [Appellant's] motion and scheduled the case for pretrial conference on August 18, 2021.

(Opinion and Order Denying Pa.R.Crim.P. 600 Motion, filed 1/11/22, at 1-4) (unnumbered) (some capitalization and citations omitted).

On August 13, 2021, Appellant filed a motion to dismiss the charges with prejudice, pursuant to Pa.R.Crim.P. 600. The court conducted a Rule 600 hearing on September 20, 2021. At the conclusion of the hearing, the court took the matter under advisement and directed the parties to submit briefs. Following the submission of briefs, the court issued an opinion and order denying Appellant's Rule 600 motion on January 11, 2022.

Appellant proceeded to trial, and a jury convicted him of attempted sexual assault, aggravated indecent assault, simple assault, and indecent assault. The jury found Appellant not guilty on one count of attempted rape of an unconscious victim. The court deferred sentencing and ordered Pennsylvania's Sexual Offenders Assessment Board ("SOAB") to conduct an evaluation of Appellant. The court also ordered a presentence investigation ("PSI") report. With the benefit of the SOAB assessment and a PSI report,

the court conducted Appellant's sentencing hearing on July 26, 2022. At that time, the court imposed an aggregate sentence of twenty-four (24) to forty-eight (48) months' imprisonment, followed by three (3) years of probation. The court also classified Appellant as a Tier III sex offender, subject to lifetime registration under 42 Pa.C.S.A. § 9799.23.

On July 28, 2022, the Commonwealth timely filed a motion for reconsideration of sentence. In it, the Commonwealth argued that the sentence of incarceration was too lenient. The Commonwealth claimed that the court placed "excessive weight" on "character letters" written on Appellant's behalf, and the court "failed to properly balance the protection of the public and the gravity of the offenses[.]" (Post-Sentence Motion, filed 7/28/22, at 5). Appellant timely filed his own post-sentence motion on August 2, 2022. Among other things, Appellant challenged certain evidentiary rulings and alleged that the verdict was against the weight of the evidence. On November 4, 2022, the court issued an order and opinion denying the parties' post-sentence motions.

Appellant timely filed a notice of appeal on November 29, 2022, which this Court docketed at 2999 EDA 2022. The Commonwealth timely filed a notice of appeal on December 1, 2022, which this Court docketed at 3105 EDA 2022. Following the submission of the notices of appeal, the court ordered the filing of Pa.R.A.P. 1925(b) concise statements of matters complained of on appeal. Appellant timely filed his Rule 1925(b) statement on December

14, 2022. The Commonwealth timely filed its Rule 1925(b) statement on December 21, 2022.

At No. 2999 EDA 2022, Appellant raises the following issues for our review:

> Whether the trial court erred when it denied [Appellant's] motion to dismiss under Rule 600 despite finding a lack of due diligence by the Commonwealth?
>
> Whether the trial court erred when it denied [Appellant's] request for a reasonable mistake of fact charge concerning lack of consent?
>
> Whether the trial court erred when it denied [Appellant's] motions *in limine* prior to trial challenging the admissibility of evidence under Rules 402, 403, and 404(b), denying the introduction of evidence under a Rape Shield proffer relevant to consent and by refusing to order a report by the Commonwealth's sexual assault expert?
>
> Whether the trial court erred when it failed to suppress the statements [Appellant] made when questioned by Trooper Leri at Skytop Lodge without being ***Mirandized***?[3]
>
> Whether the trial court erred when it failed to suppress [Appellant's] statements made during a controlled telephone call with [Victim] where the intercept was not supported by reasonable grounds to suspect criminal activity as required by 18 Pa.C.S.A. § 5704?
>
> Whether the trial court erred in denying [Appellant's] post-sentence motion challenging the sufficiency and weight of the evidence to support [Appellant's] guilty verdicts?

(Appellant's Brief at 12-13).

_____

[3] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At No. 3105 EDA 2022, the Commonwealth raises one issue for this Court's review:

> Whether the sentence imposed and reasons provided by the sentencing court following a conviction of attempted sexual assault, aggravated indecent assault and misdemeanor assault offenses contradicts the fundamental norms underlying the sentencing process warranting a remand and resentence?

(Commonwealth's Brief at 12).

In his first issue, Appellant acknowledges Monroe County's April 22, 2020 order stating that any postponement due to the pandemic would be considered excludable delay for Rule 600 purposes. Appellant contends that "[t]he intent of the order was clear. If a case [was] ready for trial but had to be delayed by the pandemic and judicial emergency, the delay would be excluded in determining a defendant's rights under Rule 600." (Appellant's Brief at 37). Appellant insists that his case was **not** ready for trial at the time of the judicial emergency. As such, "any postponement or delay would not be caused by the pandemic and the judicial emergency and should not be excluded." (*Id.* at 37-38).

Against this backdrop, Appellant argues that the court committed multiple errors in evaluating his Rule 600 motion. Specifically, Appellant asserts that the court "miscounted" certain periods of delay. (*Id.* at 38). Appellant complains that the court compounded this error by improperly classifying certain periods as excludable delay when those periods "should have been deemed normal progression and included in the [Rule] 600

calculation[.]" (*Id.* at 38-39). Appellant also claims that his July 21, 2020 pretrial motion did not actually delay the commencement of trial "since the court had not decided the original omnibus [pretrial motion] issues due to the Commonwealth's delinquency" in filing a brief. (*Id.* at 39-40).

Appellant maintains that the Commonwealth's failure to file a brief until December 15, 2020 amounted to a lack of due diligence, and the Commonwealth created a 229-day delay that the court should have considered when calculating the adjusted run date under Rule 600. Upon performing his own calculations, Appellant opines that his trial did not occur before the correct adjusted run date. Appellant concludes that the trial court erred by denying his Rule 600 motion, and this Court must reverse his convictions and dismiss the charges against him. We disagree.

The following principles apply to our review of a speedy trial claim:

> Our standard of review in a Rule 600 issue is whether the trial court abused its discretion. Our scope of review when determining the propriety of the trial court is limited to the evidence in the record, the trial court's Rule 600 evidentiary hearing, and the trial court's findings. We must also view the facts in the light most favorable to the prevailing party[.]

*Commonwealth v. Risoldi*, 238 A.3d 434, 449 n.14 (Pa.Super. 2020), *appeal denied*, 664 Pa. 562, 244 A.3d 1230 (2021).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective

- 11 -

prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (quoting

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011)).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.  Prompt Trial**

**(A)  Commencement of Trial; Time for Trial**

\*     \*     \*

(2)   Trial shall commence within the following time periods.

(a)   Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*     \*     \*

**(C)  Computation of Time**

(1)   For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth

- 12 -

> when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(A)(2)(a), (C)(1).

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

**Martz, supra** at 810-11 (quoting **Commonwealth v. Moore**, 214 A.3d 244, 248-49 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 224 A.3d 360 (2020)) (internal citations and quotation marks omitted).

To obtain relief, a defendant must have a valid Rule 600 claim at the time he files the motion to dismiss. **Commonwealth v. Hunt**, 858 A.2d 1234 (Pa.Super. 2004) (*en banc*). "When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant." **Commonwealth v. Barbour**, 647 Pa. 394, 399, 189 A.3d 944, 947 (2018). Recently, this Court addressed the concepts of "mechanical" and "adjusted" Rule 600 run dates, as well as the impact of local emergency orders on the calculation of these dates:

> In a Rule 600 analysis, the "mechanical run date" is 365

days after the complaint was filed. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed. Two key cases guide our analysis here.

First, in [**Commonwealth v. Harth**, 666 Pa. 300, 252 A.3d 600 (2021)], our Supreme Court held that "before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay,'" the Commonwealth must "demonstrate that it acted with due diligence." That is:

> [I]n ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

Second, this Court considered the effect of local emergency orders in **Commonwealth v. Carl**, 276 A.3d 743 (Pa.Super. 2022). The issue in **Carl** was whether a period of a local judicial emergency would be excluded from the Rule 600 computation, *i.e.*, whether to add the days of the judicial emergency to the run date. The relevant order contained two provisions: "Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial," and: "Any postponement caused by the judicial emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule 600." This Court read the first provision as an absolute, unqualified suspension and the second provision as a supplemental rule for additional postponements. The second provision set a local policy to address ongoing delays. Because the first provision unambiguously suspended Rule 600, the days of that suspension should have been added to the run date regardless of the Commonwealth's diligence.

**Harth** and **Carl** frame the inquiry for the effect of emergency orders on Rule 600. If an order unambiguously suspends Rule 600 without qualification, then the period of

- 14 -

the suspension is added to the run date without considering the Commonwealth's diligence. Alternatively, if an order characterizes a delay as a court postponement, then that period is only excluded if the trial court determines after a hearing that the Commonwealth exercised due diligence through the life of the case.

*Commonwealth v. Lear*, 290 A.3d 709, 718-19 (Pa.Super. 2023), *appeal granted in part*, ___ Pa. ___, 305 A.3d 541 (2023) (internal citations and footnote omitted).

Instantly, the Commonwealth filed the criminal complaint on October 3, 2019. Therefore, the mechanical run date was October 2, 2020.[4] Appellant proceeded to his arraignment on December 11, 2019. On January 9, 2020, Appellant filed an omnibus pretrial motion. The court conducted a hearing on the motion on February 18, 2020. After the hearing, the court took the matter under advisement and ordered the parties to submit briefs within thirty days. (*See* Order, filed 2/21/20, at 1). At the request of the Commonwealth, the court extended the deadline for filing briefs until April 20, 2020.[5] (*See* Order, filed 3/18/20, at 1).

On March 16, 2020, our Supreme Court issued its order declaring a

___

[4] 2020 was a Leap Year.

[5] In its second order regarding the statewide judicial emergency, our Supreme Court declared that "any legal papers or pleadings which are required to be filed between March 19, 2020, and April 30, 2020, SHALL BE DEEMED to have been timely filed if they are filed by May 1, 2020…." *In re General Statewide Judicial Emergency*, 658 Pa. 444, 446, 229 A.3d 229, 230 (2020). Thus, the deadline for filing for the filing of pretrial briefs became May 1, 2020.

- 15 -

general, statewide judicial emergency. That same day, Monroe County's President Judge declared a judicial emergency and suspended Rule 600 during the period of the local judicial emergency. In subsequent orders, Monroe County's President Judge extended the local judicial emergency until June 30, 2021, declaring this period "excludable" for Rule 600 purposes. (*See* Opinion and Order Denying Pa.R.Crim.P. 600 Motion at 2-4) (unnumbered).

In evaluating the delays, the court found sixty-seven (67) days of excludable delay from January 9, 2020 through March 16, 2020, due to Appellant's filing of the pretrial motion. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1190 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005) (explaining defendant is "unavailable" for trial if delay in commencement of trial is caused by filing of pretrial motion). This delay yielded an adjusted run date of December 8, 2020.

The court also identified an additional four hundred seventy-one (471) days of delay from March 16, 2020 through June 30, 2021, due to the local judicial emergency. As noted by Appellant, the court did not immediately add this period of delay to the adjusted run date. Instead, the court proceeded to evaluate the Commonwealth's due diligence during this period. (*See* Appellant's Brief at 37). In light of the relevant language from the orders extending the local judicial emergency in Monroe County, we cannot say that the court erred by undertaking a review of the Commonwealth's due diligence. *See Lear, supra*.

The court determined that "the Commonwealth clearly failed to satisfy the requirement to exercise due diligence by failing to file a timely brief in response to [Appellant's] January 9, 2020 omnibus motion." (**See** Opinion and Order Denying Pa.R.Crim.P. 600 Motion at 7) (unnumbered). The court also found that the delay attributable to the Commonwealth began on May 1, 2020 (the deadline for filing a brief) and extended through July 21, 2020, when Appellant filed the supplemental pretrial motion seeking *habeas corpus* relief. The court observed that the filing of the supplemental pretrial motion "created a new period of [delay] in the progression of this case wherein a trial, regardless of the Commonwealth's due diligence, could not commence." (**Id.** at 8) (unnumbered). Consequently, the court decided that only the eighty-one (81) days between May 1, 2020 and July 21, 2020 were attributable to the Commonwealth's failure to exercise due diligence.[6] The court then subtracted the amount of delay caused by the Commonwealth's failure to exercise due diligence (81 days) from delay created by the local judicial emergency (471 days). This calculation yielded a total of three hundred ninety (390) days of excludable delay, which created a final adjusted run date of January 2, 2022. (**Id.** at 10) (unnumbered).

_____

[6] In his brief, Appellant correctly notes that the court mistakenly calculated the period between May 1, 2020 and July 21, 2020 as forty-eight (48) days. (**See** Opinion and Order Denying Pa.R.Crim.P. 600 Motion at 8) (unnumbered). Thus, we modified the court's subsequent calculations of the adjusted run date based upon an 81-day delay.

Contrary to Appellant's assertions, we conclude that the court did not err in applying the mandates of Rule 600 to the instant case. Appellant ignores the impact that his pretrial filings had on the progression of the proceedings. The court did not abuse its discretion in attributing certain periods of delay to these pretrial filings or in determining the excludable portion of the local judicial emergency. **See Risoldi, supra**. Therefore, Appellant did not have a viable speedy trial claim when he filed his Rule 600 motion, and he is not entitled to relief on his first claim.

In his second issue, Appellant contends that he requested a jury instruction "on reasonable mistake of fact concerning [Victim's] alleged unconsciousness (count 1) and lack of consent (counts 2, 3, 4 and 5)."[7] (Appellant's Brief at 43). While the court granted Appellant's request as to count 1, the court denied his request for an instruction on lack of consent for the remaining counts. Appellant also notes that the court instructed the jury that "reasonable mistake of fact was only a defense to count 1 and no other count." (**Id.**) Appellant maintains that "[t]here was enough evidence to warrant a reasonable mistake of fact instruction" for the remaining counts, and the jury could have found that Appellant "reasonably believed [Victim] had [consented] and that [Appellant's] actions were in response to her

---

[7] The verdict slip listed count 1 as attempted rape, count 2 as attempted sexual assault, count 3 as aggravated indecent assault, count 4 as simple assault, and count 5 as indecent assault. (**See** Verdict Slip, filed 5/12/22, at 1).

conduct toward him." (**Id.** at 47, 48).

> Moreover, by giving the requested reasonable mistake of fact instruction for count 1 and then telling the jury reasonable mistake of fact was only a defense to count 1, the trial court allowed the jury to convict [Appellant] on [Victim's] alleged lack of consent regardless of [Appellant's] knowledge [that] she was not or his recklessness in appreciating she may not be consenting but deciding to proceed regardless.

(**Id.** at 48).   Appellant concludes that the court's failure to provide the requested jury instructions warrants a new trial.  We disagree.

"The trial court has considerable discretion in fashioning a jury charge." **Commonwealth v. Gomez**, 224 A.3d 1095, 1102 (Pa.Super. 2019), *appeal denied*, 661 Pa. 484, 236 A.3d 1053 (2020).  "The court is free to use its own expressions, provided it clearly and accurately conveys the applicable legal concepts at issue."  **Id.**  "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.'" **Commonwealth v. Scott**, 73 A.3d 599, 602 (Pa.Super. 2013) (quoting **Commonwealth v. Brown**, 911 A.2d 576, 583 (Pa.Super. 2006)).

"In reviewing instructions to a jury, we consider the entire charge, 'not merely discrete portions thereof.'"  **Gomez, supra** at 1102 (quoting **Commonwealth v. Johnson**, 630 Pa. 493, 552, 107 A.3d 52, 88-89 (2014)). "We examine the entire instruction 'against the background of all evidence presented, to determine whether error was committed.'"  **Commonwealth v. Rush**, 162 A.3d 530, 540 (Pa.Super. 2017) (quoting **Commonwealth v.**

***Grimes***, 982 A.2d 559, 564 (Pa.Super. 2009)). "A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." ***Id.*** (quoting ***Grimes, supra*** at 564).

The defense of mistake-of-fact is defined as:

**§ 304. Ignorance or mistake**

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or

(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S.A. § 304.

It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent. When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged.

***Scott, supra*** at 603 (quoting ***Commonwealth v. Hamilton***, 766 A.2d 874, 878-79 (Pa.Super. 2001)) (internal citations and quotation marks omitted).

Instantly, the court conducted a charging conference on May 11, 2022.

At that time, the parties engaged in an extensive argument over the parameters of any instruction on mistake of fact. (***See*** N.T. Trial, 5/11/22, at 247-57). Specifically, defense counsel advanced the following argument in favor of providing the jury with a mistake of fact instruction as to Victim's lack of consent:

> But I submit in this case where the argument or the element is lack of consent and not forcible compulsion, we are entitled to a charge that the jury has to look at and see if it was reasonable based upon the facts at hand in light of the need to prove knowledge and/or recklessness on the part of [Appellant], that he—if he—if she did not consent, but he was reasonably mistaken that she had, then that is a defense.

(***Id.*** at 249). The next day, prior to instructing the jury, the court conducted an *in camera* meeting with counsel. At that time, the court announced that it would provide a mistake of fact instruction as to count one, attempted rape, only. The court added, "The case law seems to suggest that if it deals with victim's consent, then it's not appropriate." (N.T. Trial, 5/12/22, at 3).

Thereafter, the court charged the jury. The charge included a mistake of fact instruction for count one. (***See id.*** at 90-92). At the conclusion of the mistake of fact instruction, the court reiterated: "And so that defense raised by the defendant would apply to this charge I am going to now instruct you on." (***Id.*** at 92). The court subsequently instructed the jury on the elements for each of the offenses at issue. With its instruction on indecent assault, the court also provided the following explanation of consent:

> When considering consent, the age and mentality of the

> victim must also be considered. A defendant acts recklessly with regard to an alleged victim's non-consent if he or she consciously disregards a substantial and unjustifiable risk that the victim is not consenting to the contact. The risk disregarded must be the sort of risk that is grossly unreasonable for the defendant to disregard.

(***Id.*** at 100).[8]

In reviewing the charge as a whole, the court "was satisfied that all of the instructions adequately and clearly present[ed] the law to the jury." (Opinion and Order Denying Post-Sentence Motions at 15). Our review of the jury instructions confirms that the court adequately, accurately, and clearly stated the law. ***See Rush, supra***; ***Commonwealth v. Fischer***, 721 A.2d 1111, 1113-18 (Pa.Super. 1998), *appeal dismissed as improvidently granted*, 560 Pa. 410, 745 A.2d 1214 (2000) (holding defendant was not entitled to mistake of fact instruction in prosecution for involuntary deviate sexual intercourse **and** aggravated indecent assault; prosecution arose from college dormitory incident where victim told defendant that she did not want to engage in sexual relations; defendant provided "grossly divergent" version of events, contending that he reasonably believed he had obtained consent; defendant also presented evidence in support of this contention at trial). ***See also Commonwealth v. Farmer***, 758 A.2d 173, 177-78 (Pa.Super. 2000), *appeal denied*, 565 Pa. 637, 771 A.2d 1279 (2001) (holding trial counsel was

---

[8] Defense counsel reiterated his objection to the court's failure to provide the requested mistake of fact instruction following the court's instructions. (***See id.*** at 109).

not ineffective for failing to request jury instruction regarding reasonable mistake as to consent in case involving rape, involuntary deviate sexual intercourse, **and** indecent assault; reiterating that *Fischer* expressly held that such instruction would be significant departure from current state of law); *Commonwealth v. Wilton*, 290 A.3d 708 (Pa.Super. 2022) (unpublished memorandum)[9] (evaluating sufficiency of evidence supporting convictions for, *inter alia*, sexual assault and indecent assault without consent; citing *Farmer, supra* to reiterate that mistake of fact about victim's consent is not defense to sex offenses).

Under the circumstances of this case, we cannot say that Appellant was prejudiced by the court's refusal to provide mistake of fact instructions for counts two through five. *See Scott, supra*. Thus, the court did not abuse its considerable discretion in fashioning the charge, and Appellant is not entitled to relief on his second issue. *See Gomez, supra*.

In his third issue, Appellant raises three discrete arguments regarding the trial court's specific evidentiary rulings. First, Appellant contends that he filed a pretrial motion and written proffer under Pennsylvania's "rape shield" law, 18 Pa.C.S.A. § 3104. In it, Appellant asked for permission to submit evidence demonstrating that, in 2013, Victim "had a sexual interest in [Appellant] and the desire to have a 'threesome' with Nicole Norris and

_____

[9] **See** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[Appellant]." (Appellant's Brief at 50) (quoting Pretrial Motion, filed 3/25/22, at 3). Appellant complains that the court denied his proffer and found "the reference to a threesome was specifically proscribed by [Section] 3104 and finding the [2013] incident was too remote." (*Id.*) Appellant maintains that the court violated Section 3104 by denying his proffer, and the court's ruling effectively hampered the jury from resolving the issue of Victim's lack of consent.

Next, Appellant asserts that the Commonwealth sought to present an expert, Jo Ellen Bowman, pursuant to 42 Pa.C.S.A. § 5920.[10] Upon learning that Ms. Bowman would be testifying, Appellant's counsel requested a copy of the expert's report. The Commonwealth, however, responded that it was not planning to have Ms. Bowman prepare a report. Appellant contends that his counsel responded by filing a pretrial motion to exclude Ms. Bowman's testimony or, in the alternative, require the production of an expert report and pretrial submission of proposed questions. Appellant argues that the court erred by denying this motion and finding that Ms. Bowman "would only testify

_____

[10] "Expert testimony under Section 5920 is, by nature, different than expert testimony on other subject matter, as its purpose is to inform the jury that a … victim of sexual assault may engage in behavior that may appear counter-intuitive to the layperson." **Commonwealth v. Dunn**, ___ Pa. ___, ___, 300 A.3d 324, 335-36 (2023) (Mundy, J., in support of affirmance). "As a result, the testimony elicited from expert witnesses in this area largely relates to common behavioral responses of sexual abuse victims, or stated differently, facts and opinions regarding specific types of victim responses and victim behaviors." **Id.** at ___, 300 A.3d at 336 (internal quotation marks omitted).

generally and not regarding the particular facts before the jury." (**Id.** at 55). Appellant avers that the court compounded this error by allowing Ms. Bowman "to indirectly bolster [Victim's] sudden recall of details over time and explain [Victim's] initial failure to recall under the guise of generalized [Section] 5920 testimony." (**Id.**)

Finally, Appellant acknowledges that he and Ms. Norris argued in the resort's parking lot immediately after the assault on Victim. Appellant filed a pretrial motion *in limine* seeking to exclude evidence regarding this argument, which he alleged was irrelevant. Appellant also alleged that the prejudicial effect of this evidence outweighed its probative value. Despite Appellant's arguments, the court denied his motion *in limine*. Appellant emphasizes that the jury subsequently heard testimony about the argument, which the court classified as evidence of Appellant's consciousness of guilt. Appellant maintains, "In admitting the evidence and instructing the jury on consciousness of guilt, the trial court committed an error…."[11] (**Id.** at 60). Based upon the foregoing, Appellant concludes he is entitled to a new trial. We disagree.

This Court's standard of review for issues regarding the admissibility of

_____

[11] Moreover, Appellant notes that the Commonwealth filed notice of its intent to offer evidence pursuant to Pa.R.E. 404(b). Appellant submits that the Commonwealth's Rule 404(b) notice was defective because it "did not mention the parking lot incident and did not state the specific nature, permitted use, and reasoning for the use of" such evidence at trial. (Appellant's Brief at 61-62).

evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. LeClair**, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting **Commonwealth v. Belknap**, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." **Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**Commonwealth v. Danzey**, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal quotation marks omitted).

After a thorough review of the certified record, the parties' briefs, and the relevant law, we conclude that the court did not abuse its discretion in

making the evidentiary rulings at issue. ***See LeClair, supra***. Consequently, Appellant is not entitled to relief on his third issue for the reasons stated in the opinion that the Honorable Stephen M. Higgins entered on November 4, 2022. (***See*** Opinion and Order Denying Post-Sentence Motions at 16-18).

Regarding Appellant's proffer under Section 3104, Judge Higgins emphasized that Appellant sought to introduce evidence of an incident involving Victim that occurred in 2013. The 2013 incident involved a Skype call where Victim proposed a threesome with Appellant and Ms. Norris. Although the court determined that this evidence did not amount to speculation or conjecture, the court concluded that the 2013 Skype call was, *inter alia*, too remote in time. (***See id.*** at 17). ***See also Commonwealth v. Knowles***, 637 A.2d 331, 333 (Pa.Super. 1994) (stating, "Whether evidence is too remote in time to be probative … is largely within the discretion of the trial court"); ***Commonwealth v. Smith***, 808 A.2d 215, 225 (Pa.Super. 2002) (stating, "In determining whether the evidence is so remote that the prejudicial effect outweighs the probative value, the court has no fixed standard on which to rely, but must instead consider the nature of the crime, the evidence being offered, and all attendant circumstances").

Regarding Appellant's motion to require an expert report from the Section 5920 expert, the court correctly noted that the expert's testimony "pertained to general dynamics of sexual assaults and did not discuss a particular victim or the facts of the case." (Opinion and Order Denying Post-

Sentence Motions at 19). (**See also** N.T. Trial, 5/10/22, at 42-72). Because the expert's testimony amounted background information to assess Victim's credibility, the court did not require an expert report. Given the current state of the law on this topic, we cannot say that the court erred.[12]

Finally, as to Appellant's claims regarding the evidence of his argument with Ms. Norris, the court emphasized that "[t]he evidence was not admitted under Pa.R.E. 404(b)." (Opinion and Order Denying Post-Sentence Motions at 18). Rather, "the parking lot incident" was relevant, and "the probative value outweighed any prejudicial effect on [Appellant]." (**Id.**) Here, we agree that such evidence, which occurred immediately after the sexual assault, tended to support reasonable inferences regarding material facts at issue. **See Danzey, supra**. While Appellant would have this Court reweigh the probative value and prejudicial effect of the evidence, we are mindful of the relevant standard of review and conclude that the trial court did not override

_____

[12] In his brief, Appellant noted that our Supreme Court would consider the issue of whether the Commonwealth must furnish a report from a Section 5920 expert in **Dunn, supra**. (**See** Appellant's Brief at 54 n.6). Our Supreme Court decided **Dunn** after Appellant submitted his brief. The **Dunn** Court was evenly divided on the issue of whether the defendant suffered prejudice under the facts at issue. The Court's opinion in support of affirmance also stated: "We do not address whether Section 5920 and Rule 573 require preparation of an expert report in all cases involving testimony about victim behaviors and responses to sexual abuse because the Commonwealth did, for the purposes of Section 5920, provide an expert report in this case." **Dunn, supra** at ___, 300 A.3d at 335. Absent further guidance from the Supreme Court on this precise issue, we decline to say that the trial court abused its discretion by failing to require an expert report in the instant case.

or misapply the law in admitting this evidence. *See LeClair, supra*. Accordingly, we adopt Judge Higgins' reasoning as our own in denying relief on Appellant's third issue.

In his fourth issue, Appellant claims he made certain statements to state police troopers after the incident with Victim. Appellant maintains that he and Ms. Norris believed they were talking to the troopers about their stolen wedding rings. Nevertheless, the troopers, "each with visible firearms," escorted Appellant "to an alcove and questioned [him] in an accusatory manner." (Appellant's Brief at 64). Appellant avers that he "was never told he did not have to speak with the troopers or that he was free to leave." (*Id.*) Appellant posits that the troopers conducted a custodial interrogation, and the troopers should have provided *Miranda* warnings prior to questioning him. Appellant concludes that the court should have suppressed all statements he provided to the troopers under these circumstances. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal

- 29 -

conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Contacts between the police and citizenry fall within three general classifications:

The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

"It is long-settled that *Miranda* warnings are only required for the third-level interaction, *i.e.*, custodial interrogation." *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa.Super. 2023).

The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of

force; and the methods of investigation used to confirm or
dispel suspicions.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa.Super. 2011),

*appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012). "Further, an interrogation

occurs when the police should know that their words or actions are reasonably

likely to elicit an incriminating response from the suspect." *Spence, supra*

at 315 (quoting *Commonwealth v. Clinton*, 905 A.2d 1026, 1032 (Pa.Super.

2006)).

Instantly, the suppression court described Appellant's encounter with

the state police as follows:

> [After Victim reported the incident to state police], Trooper
> [Justin] Leri was notified by patrol troopers that [Appellant]
> had reported a separate incident concerning alleged theft of
> the wedding rings. He learned Appellant and [Ms. Norris]
> were staying at Skytop Lodge in Barrett Township, Monroe
> County. After he was unable to contact [Appellant] through
> the front desk, he called [Appellant's] cell phone and told
> him he was working on an investigation and would like to
> talk. [Appellant] asked if that investigation pertained to the
> rings, and Trooper Leri responded, "yeah, there's a lot of
> things we need to talk about." He at no time mentioned
> [Victim] or her allegations.
>
> [Appellant], with [Ms. Norris], met Trooper Leri and Trooper
> Giello at the front door of the building. They dressed in plain
> clothes and arrived in an unmarked vehicle, although both
> were wearing holstered firearms, as required by the
> Pennsylvania State Police. Trooper Leri identified himself
> and asked if they would prefer to go someplace more private
> than right in front of the car entrance. Together, they
> walked around to an alcove in the corner of the building.
> Trooper Leri does not remember if he and Trooper Giello
> stood between [Appellant] and the open space. Never did
> he say either [Appellant] or [Ms. Norris] was under arrest.
> But he also did not tell them specifically that they were not

obligated to follow him and could leave whenever they wanted. [Appellant] was never cuffed, and Trooper Leri explained to him that he was not under arrest, though he did not specifically advise [Appellant] that he was free to leave.

During this conversation, [Appellant] stated the incident was consensual. At one point, he said that, if there were ever a case where a woman raped a man, it probably happened here. He admitted to engaging in digital penetration, using the word "fingering," while in the shower with [Victim]. He said [Victim] got on top of him, but he could not get his penis erect. [Appellant] did admit that he grabbed her roughly enough to leave marks. Trooper Leri told [Appellant] he is not capable of making good decisions with alcohol. He suggested maybe "getting some sort of counseling, because these decisions while intoxicated are incredibly wrong, legally or morally." During this time, [Ms. Norris] was visibly upset.

(Opinion and Order Denying Omnibus Pretrial Motion, filed 3/26/21, at 6-7) (record citations omitted).

The suppression court evaluated these facts and concluded that "following two troopers into a corner with them possibly standing between the subject and the open world does not necessarily make the interaction custodial." (*Id.* at 9). The court added that these circumstances "did not deprive [Appellant] of his physical freedom to the extent required so as to become the functional equivalent of an arrest." (*Id.*) We agree with the court's conclusion. To the extent Appellant also complains that the troopers did not inform him that he was free to leave, this was just one factor under the totality of circumstances. *See Goldsborough, supra*. Absent more, the suppression court did not commit an error of law in concluding that Appellant

was not subjected to a custodial interrogation when questioned by the troopers outside Skytop Lodge. *See Ford, supra*. Because the interaction did not amount to a custodial interrogation, the troopers did not have a duty to provide Appellant with *Miranda* warnings. *See Spence, supra*. Thus, Appellant is not entitled to relief on his fourth issue.

In his fifth issue, Appellant asserts that the state police arranged for Victim to engage in a monitored telephone call with Appellant. Appellant insists, however, that the state police could not legally intercept this telephone call unless they possessed reasonable grounds to suspect that criminal activity had occurred. Appellant contends that the police could not meet this standard where, aside from Victim's allegations, they possessed "no facts other than [the trooper] had been shown the 'Plan B' text message, that [Victim] was highly intoxicated and was 'piecing together' what had occurred." (Appellant's Brief at 67). Appellant concludes that the state police did not possess a reasonable belief that a crime had been committed, and the court should have suppressed Appellant's statements from the intercepted telephone call on this basis. We disagree.

This Court has explained that the Wiretap Act

> is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances

these otherwise illegal practices and their derivative fruits may be used.

***Commonwealth v. Glass***, 200 A.3d 477, 483 (Pa.Super. 2018), *appeal denied*, 654 Pa. 507, 216 A.3d 226 (2019).

The Wiretap Act provides the following exception, which allows law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation provides consent:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted

communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom[.]

18 Pa.C.S.A. § 5704(2)(ii). "In determining whether the approval of a consensual wiretap was proper, this Court has determined that police officers must articulate 'reasonable grounds' for the monitoring and the … district attorney must verify that that these reasonable grounds exist." ***Commonwealth v. McMillan***, 13 A.3d 521, 525 (Pa.Super. 2011), *appeal denied*, 611 Pa. 668, 27 A.3d 224 (2011).

Instantly, the suppression court explained the circumstances that culminated with the state police monitoring Victim's telephone call to Appellant:

> [Victim] reported the incident to the police, and Trooper Justin Leri investigated. She repeatedly told him she did not consent to any type of sexual activity with [Appellant]. Trooper Leri took her written statement…. Trooper Leri believes this statement broadly coincides with what she told him verbally and had reported to the sexual-assault nurse at the hospital.
>
> Trooper Leri believed the best course of action was to set up a one-party consensual intercept and have [Victim] call [Appellant]. To do this, he called the on-call district attorney, explained the circumstances, the information he had at the time, and why a consensual intercept would be the best course of action. He prepared an officer's memorandum and submitted it to the district attorney for review. Assistant District Attorney Julianne Fry then personally met with [Victim] and went over a consent memorandum with her. She signed the consent form on September 2, 2019. The form states that no promises or threats have been made, and she is freely and voluntarily giving consent. [Victim] texted [Appellant] in order to

- 35 -

arrange the call. The actual recording was submitted by the Commonwealth as Exhibit 5 in the first omnibus hearing.

(Opinion and Order Denying Omnibus Pretrial Motion at 5-6) (record citations omitted).

The suppression court concluded that Trooper Leri articulated reasonable grounds for monitoring the call where Victim "reported [Appellant] sexually touching her and biting her without consent while she was 'blacked out.'" (*Id.* at 15). We agree that the Commonwealth satisfied the applicable standard. *See Commonwealth v. Bellamy*, 252 A.3d 656 (Pa.Super. 2021) (stating intercepted recording of informant's communication with defendant was supported by reasonable grounds to suspect criminal activity; informant approached detectives with defendant's phone number, street alias, and motel room from which defendant was selling heroin, informant positively identified picture of defendant, and district attorney consensualized informant prior to intercepting and recording informant's communication with defendant); *McMillan, supra* (holding detectives possessed reasonable grounds to suspect that defendant would discuss his past sexual encounters with minor during intercepted phone call; although defendant had no contact with minor for over one year before interception, detectives felt defendant would discuss encounters based on defendant and minor's close relationship); *Commonwealth v. Taylor*, 622 A.2d 329 (Pa.Super. 1993) (explaining that reasonable grounds existed to support a consensual wiretap where, prior to

interception, informant provided police with information about his illegal dealings with defendant).

Although Appellant attempted to challenge the credibility of Victim's report, the court correctly found that Victim's uncorroborated statement was sufficient. *See Bellamy, supra* at 668 n.19 (reiterating that "[t]o the extent [the a]ppellant appears to challenge the suppression court's weight and credibility determinations, we reject such challenge. As an appellate court, we cannot upset the credibility determinations of the suppression court"). Therefore, the Commonwealth complied with the mandates of the Wiretap Act, and Appellant is not entitled to relief on his fifth issue. *See* 18 Pa.C.S.A. § 5704(2)(ii).

In his final issue, Appellant evaluates the evidence offered by the Commonwealth to support the convictions for attempted sexual assault, aggravated indecent assault, and indecent assault. Appellant submits that the Commonwealth needed to present evidence that he "knew or subjectively appreciated that [Victim] was not consenting but disregarded the risk of non-consent[.]" (Appellant's Brief at 68) (emphasis omitted). While Appellant concedes that the uncorroborated testimony of a sexual assault victim can provide sufficient evidence to support a conviction, Appellant emphasizes that "[a] court is not required to accept what common sense, life experience, and a reasonable intellect would otherwise indicate. Juries sometimes get it wrong." (*Id.* at 71).

Appellant insists that Victim's trial testimony conflicted with statements she made to the emergency room doctor and SAFE nurse. Moreover, Appellant asserts that Victim could not recall many details of the assault at trial due to the amount of alcohol she consumed on the day of the assault. After picking apart Victim's testimony in excruciating detail, Appellant posits that her testimony was "so inherently unreliable that a verdict based upon it 'amount[s] to no more than surmise or conjecture.'" (*Id.* at 78-79) (citing *Commonwealth v. Karkaria*, 533 Pa. 412, 419, 625 A.2d 1167, 1170 (1993)). For these reasons, Appellant concludes that the court erred in denying his post-sentence motion challenging the sufficiency and weight of the evidence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where

the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Sebolka**, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting **Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

Additionally,

The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

**Commonwealth v. Small**, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted). "Furthermore, it is well-established that 'the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" **Commonwealth v. Castelhun**, 889 A.2d 1228, 1232 (Pa.Super. 2005) (quoting **Commonwealth v. Bishop**, 742 A.2d

178, 189 (Pa.Super. 1999)).

The Crimes Code defines criminal attempt and sexual assault as follows:

**§ 901.  Criminal attempt**

**(a)  Definition of attempt.—**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S.A. § 901 (a).

**§ 3124.1.  Sexual assault**

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1.

Additionally, the Crimes Code defines aggravated indecent assault, simple assault, and indecent assault, in pertinent part, as follows:

**§ 3125.  Aggravated indecent assault**

**(a)  Offenses defined.—**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1)  the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3125(a)(1).

**§ 2701.  Simple assault**

   **(a)  Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

   (1)   attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

**§ 3126.  Indecent assault**

   **(a)  Offense defined.—**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

   (1)   the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1).

Instantly, Victim testified about the assault that occurred inside the locker room.  At first, Victim "woke up to the pain of [Appellant] biting my nipple."  (N.T. Trial, 5/9/22, at 70).  Victim discovered that Appellant "was holding me on my back" with one hand, and "with the free hand … was touching me and my vagina and telling me that he—just relax, just relax." (*Id.* at 72, 73).  Victim tried to get away, but Appellant "had pulled me—I don't know if it was pulling back but it was pulling down."  (*Id.* at 72).  Victim expressly stated that Appellant penetrated her vagina with his hand, and he was "playing with himself and touching" Victim.  (*Id.* at 73).  After the assault,

Victim "was sore in my thighs but also in my arms and just in general overall sore." (*Id.* at 85). Victim eventually went to the hospital where the emergency room physician and SAFE nurse observed bruising and abrasions on Victim's body. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, Victim's uncorroborated testimony supported each of Appellant's convictions. *See Castelhun, supra*; 18 Pa.C.S.A. §§ 901(a), 2701(a)(1), 3124.1, 3125(a)(1), 3126(a)(1).

Although Appellant maintains that Victim's testimony was unreliable and incredible, the jury was free to believe all, some, or none of her testimony. *See Champney, supra*. In analyzing Appellant's challenge to the weight of the evidence, the trial court concluded:

> The evidence in this case shows that [Appellant] had physically pulled the victim into the area of the showers. The testimony of the victim was compelling, and the jury chose not to believe the conflicting testimony of [the maid of honor] and [Ms. Norris]. [The trial c]ourt observed the entire trial and we find that the jury correctly determined the facts in this case. Further, the verdict is not so contrary to the evidence which would shock one's sense of justice.

(Opinion and Order Denying Post-Sentence Motions at 20). Based upon our review of the record, we cannot say that the court palpably abused its discretion in ruling on the weight claim. *See Champney, supra*. Therefore, Appellant is not entitled to relief on his final claim.

In its one issue for cross-appeal, the Commonwealth concedes that Appellant's sentence falls "within the statutory limits at the very, very bottom of the mitigated range and separated from a downward departure sentence

by **one day**." (Commonwealth's Brief at 21-22) (emphasis in original). The Commonwealth insists, however, that Appellant's sentence is "offensive to victims of sexual assault and contrary to the fundamental norms underlying the sentencing process for sexual assault convictions[.]" (*Id.* at 22). More specifically, the Commonwealth alleges that Appellant's sentence "is excessively and unjustifiably lenient given the lack of reasons supporting mitigation." (*Id.*) Additionally, the Commonwealth complains that the court demonstrated "bias toward the victim and sympathy toward [Appellant]" throughout the proceedings. (*Id.* at 23). The Commonwealth concludes that this Court must remand the matter for resentencing due to the court's imposition of an excessively lenient sentence. As presented, the Commonwealth's claim challenges the discretionary aspects of sentencing. *See Commonwealth v. Hicks*, 151 A.3d 216 (Pa.Super. 2016), *appeal denied*, 641 Pa. 524, 168 A.3d 1287 (2017) (explaining claim that sentencing court failed to provide adequate reasons for sentence imposed constituted challenge to discretionary aspects of sentencing).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P

- 43 -

902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting **Hyland, supra** at 1183).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." **Phillips, supra** at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). "[T]he sentencing court's failure to set forth adequate reasons for the sentence imposed also raises a substantial question." *Hicks, supra* at 227.

Instantly, the Commonwealth timely filed its notice of appeal, preserved its issue in a post-sentence motion, and its brief included a Rule 2119(f) statement. Further, the Commonwealth raises a substantial question as to the appropriateness of the sentence by alleging that the court did not provide adequate reasons to justify the sentence imposed. *See id.* Accordingly, we proceed to address the merits of the Commonwealth's issue.

This Court reviews discretionary sentencing challenges based on the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> In reviewing a record to determine if the sentencing court abused its discretion, the Sentencing Code instructs this Court to consider the nature and circumstances of the crime; the history and characteristics of the defendant; the sentencing court's findings as well as the court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines.

The Sentencing Code also instructs sentencing courts to consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The balancing of these Section 9721(b) sentencing factors is within the sole province of the sentencing court.

The sentencing court must also consider the sentencing guidelines when sentencing a defendant. However, the sentencing guidelines are purely advisory in nature—they are not mandatory.

\* \* \*

Further, the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain. This Court has stated that when a court possesses a PSI, it is presumed the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors.

*Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa.Super. 2024) (internal citations and quotation marks omitted).

A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question[.] [W]hen a trial court imposes a sentence that is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.

*Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Instantly, the court provided the following statement at the conclusion of Appellant's sentencing hearing:

Alright, well I did review the presentence report in this matter, it's a very thorough well written report. It contains

- 46 -

accurate information regarding an assessment of the guidelines that are applicable in this case. I am aware of the guidelines for each offense having reviewed that report. I also had the benefit of not only sitting through the trial in this case and listening to all the testimony, but there were a number of pre-trial proceedings. This case dates back several years, there has been numerous litigation on various legal issues, so I am quite familiar with the allegations here. I know that the jury found the defendant guilty of these four offenses, they took about eight or nine hours deliberating, rendered a verdict after 9 p.m. on the last day of the trial, and I don't think there's any dispute of anyone involved here that [Appellant] has been found guilty of some very serious offenses.

You know, the facts of this case are hard to comprehend on how this occurred during [Appellant's] wedding weekend, I think that's what's gotten the media so interested in this case, the fact that a groom is charged with a sexual assault, or now convicted of a sexual assault on his wedding weekend. The parties were all together that day or two before the wedding, rafting down the Delaware, or tying boats together, floating equipment, a flotilla, which is a common occurrence here in the warm weather months.

\* \* \*

People were stumbling around the river and it was a dangerous situation, and from that river, according to the evidence that was presented, [Appellant] escorted [Victim] up into the Shawnee Inn, and there was a video feed showing them walking down the hallway together, and then what the jury saw and what I saw was ultimately [Appellant] pulling [Victim] in through a door that ultimately led into the men's locker room. They were in there for some time, either Amanda Glidden or [Ms. Norris] arrived and saw what occurred in the locker room, there's certainly different assessments of what happened there, but you know it was, all along it was difficult for me to comprehend how this was occurring on [Appellant's] wedding weekend, how this was occurring, and I know that [Victim] was heavily intoxicated, I saw her outside of the locker room, there was a video of her, she could barely stand up, she was clearly intoxicated, and I'm not sure how intoxicated [Appellant] was, but I can

only imagine that he was very intoxicated based on the information being provided by others on the boat, and the fact that he was engaging in this type of behavior on his wedding, during his wedding weekend, it was really incomprehensible what was happening here, and the jury heard it all and they found him guilty of these serious charges, and you know, I have to look … and individualize my sentencing here and I need to consider everything, and I'm going to do that and you know, I get a lot of information from the pre-sentence investigation report about [Appellant's] circumstances, his history, his background.

I learned a lot as well from the letters that were submitted on his behalf. I was really amazed how many letters were put together, I counted close to a hundred letters that were submitted on [Appellant's] behalf, and these are letters from religious, or the clergy, lawyers, doctors, other professionals in the community who know [Appellant], know his family, many of them specifically addressed [Appellant], and you know, he, obviously with these people that wrote these letters, he enjoys a good reputation with them, and he has done a lot of good in his life and I don't think that can be discounted, but I have to consider what he's convicted of as well and the serious nature of the charge. The serious charge, or the most serious charge is attempt to commit sexual assault and it's a felony of the second degree, and it's an offense gravity score under our guideline of an 11[.]

\* \* \*

So I need to consider that, I need to consider the impact that offense has had on the victim here when imposing a sentence, and this is not easy, this case and this sentencing has been weighing on me. I've been thinking about for quite some time since the verdict was returned, what's the appropriate sentence.

\* \* \*

I have to acknowledge that a sentence of probation or even a county range sentence is inappropriate in this case, that would result in a guideline departure. I'm not going to impose a departure range sentence in this case. I think such a sentence would depreciate the serious nature of the

offense, but I also want to take into consideration some mitigating factors that I think exist in this case. [Appellant's] history and background, the fact that this is, I believe an aberration, that this conduct is unlikely to happen again, so I think there are some mitigated factors here. So I intend to impose a sentence on him, within the guidelines, but giving consideration to some mitigation, and I'm trying to impose what I feel is the right sentence.

\* \* \*

[Appellant] is a certified public accountant, he may lose his CPA license as a result of this, he's going to have to register under Megan's Law, lifetime registration. I mean there's huge consequences all around here, but to me in reviewing everything, under all these circumstances, and giving the jury, the verdict the respect that it deserves of what they found the defendant guilty of, a sentence of total incarceration is warranted and I intend to impose that.

(N.T. Sentencing Hearing, 7/26/22, at 22-27).

Here, the court properly weighed the relevant factors in fashioning the sentence, including the nature and circumstances of the crimes and the gravity of the offenses as they relate to the impact on the life of the victim. *See Baker, supra*. The court's on-the-record statement provided adequate justifications for the sentence imposed, and the presence of a PSI report allows us to presume that the court considered all relevant factors. Moreover, the Commonwealth concedes that Appellant's sentence does not fall outside the guidelines. Under such circumstances, we decline the Commonwealth's invitation to reweigh the mitigating and aggravating factors presented to the sentencing court. *See Baker, supra* (holding court acted within its discretion in imposing eight-year probationary sentence for defendant's various drug-

related charges; even though sentence was **below** mitigated range, court provided reasons for deviating from guidelines in extensive, on-the-record discussion). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins this memorandum.

Judge Dubow files a dissenting memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/16/2024

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : **NO. 2644 CRIM 2019** |
| | : |
| | : |
| **vs.** | : |
| | : |
| **DANIEL J. CARNEY,** | : |
| | : |
| **Defendant** | : **POST-SENTENCE MOTIONS** |

**O P I N I O N**

The matter is before the Court on the Commonwealth's Motion for Reconsideration of Sentence and for Reconsideration of Post-Sentence Bail/Release (Reconsideration) filed on July 28, 2022 and Defendant Daniel J. Carney's (hereinafter "Defendant") Post Sentence Motion for Judgment of Acquittal and New Trial (Motion) filed on August 2, 2022.

Defendant was charged in the Criminal Information with numerous criminal offenses including Criminal Attempt – Rape of Unconscious Victim; Aggravated Indecent Assault, Simple Assault; and related charges. After a trial by jury, held on May 9, 2022 through May 12, 2022, Defendant was convicted of the following:

1) Criminal Attempt-Sexual Assault [F2];

2) Aggravated Indecent Assault w/o Consent [F2];

3) Simple Assault [M2]; and

4) Indecent Assault w/o Consent [M2].

On July 26, 2022, Defendant was sentenced to not less than 24 months (2 years) with the maximum not to exceed 48 months (4 years) on Count 2, Criminal Attempt to Commit Sexual Assault to be served in a state correctional institution with a one day time credit. On Count 3, Aggravated Indecent Assault without Consent, Defendant was sentenced to not less than 21 months with the maximum not to exceed 42 months to run concurrent with the sentence imposed on Count 2. Defendant was sentenced on Count 4, Simple Assault, to not less than 1 month with the maximum not to exceed 12 months, concurrent to the sentence imposed on Counts 2 and 3. As to Count 5, Indecent Assault without Consent, Defendant was sentenced to not less than 3 months with the maximum not to exceed 12 months, concurrent to the sentence imposed on Counts 2, 3 and 4, for an aggregate sentence of not less than 24 months with the maximum not to exceed 48 months. In addition, we ordered that this sentence shall be followed by a 3 year consecutive period of probation to be supervised by the Pennsylvania State Board of Parole and Probation pursuant to 42 Pa. C.S. §9718.5 and classified Defendant as a Tier 3 offender subject to lifetime registration requirements set forth in 42 Pa. C.S.A. §9799.23 (Megan's Law).

In its Reconsideration, the Commonwealth complains that the sentence imposed in this case is "one day above a departure sentence" on the top charge of Attempted Sexual Assault and it seeks reconsideration of that sentence. The Commonwealth also requests reassessment of the Court's decision to run the remaining sentences concurrent to the sentence imposed on the Attempted Sexual Assault. The Commonwealth seeks reconsideration of the sentence arguing that the Court failed to properly consider two

aggravating factors, the gravity and seriousness of harm inflicted on the victim and the physical harm caused to the victim. In that vein, the Commonwealth requests the Court to impose consecutive sentences and also requests the issue of restitution to be reviewed. Additionally, the Commonwealth objects to the Court decision to allow the Defendant to remain on bail pending appeal and asks for bail to be denied.

In his Motion, the Defendant seeks a judgment of acquittal on the charges of Attempted Sexual Assault, Aggravated Indecent Assault, and Indecent Assault without Consent. The Defendant maintains that a new trial is necessary due to the Court's failure to instruct the jury on reasonable mistake of the victim's unconsciousness and lack of consent. He also requested a new trial based on several evidentiary rulings and contends that the verdict was against the weight of the evidence.

## MOTION TO RECONSIDER SENTENCE

The Commonwealth complains that the Court erred in fashioning the Defendant's sentence. Specifically, it complains that we failed to properly give potential aggravating factors the same analysis and weight which was given to the mitigating factors. The Commonwealth believes that the Defendant should have at the very least be sentenced in the standard range with consecutive sentences for the charges of Attempted Sexual Assault, Aggravated Indecent Assault, and Indecent Assault without Consent.

We note that "[s]entencing is a matter vested in the sound discretion of the sentencing judge." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted). "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of

offense in relation to impact on victim and community, and rehabilitative needs of the defendant...[a]nd, of course, the court must consider the sentencing guidelines." *Commonwealth v. Caldwell,* 117 A.3d 763, 768 (Pa. Super. 2015) (citation omitted). Furthermore, where the Court has the benefit of a pre-sentence investigation report ("PSI"), it can be assumed that the Court was aware of relevant information regarding the defendant's character and weighed them along with mitigating statutory factors. *Commonwealth v. Tirado,* 870 A.2d 362, 368 (Pa. Super. 2005) (citations omitted).

After a review of the records, including the PSI, we determined that the Defendant should be sentenced in the mitigated range of the sentencing guidelines and that the imposition of concurrent sentences was appropriate. While the Commonwealth takes issue with the way the Court balanced the mitigating factors against the potential aggravating factors, we considered all the circumstances in this case, including the information contained in the PSI. The Court is well aware of all the facts in this case. We sat through all pre-trial matters raised by the parties and presided over the jury trial in this matter. Although the Commonwealth seems to suggest that the Court imposed a downward departure sentence, the sentence imposed is not a departure sentence, it is within the mitigated range of the guidelines[1]. Further, the Court did not primarily focus

---

[1] Sentencing is within the sound discretion of the sentencing judge and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Garcia-Rivera,* 983 A.2d 777, 780 (Pa. Super. 2009). When deviating from the guidelines, a sentencing court shall set forth on the record the reasons. We did not deviate from the guideline and, nevertheless, placed on the record the mitigating factors we considered. "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted). Instantly, since the Court was provided with a PSI, we were provided with all relevant

4

on the character letters submitted on behalf of the Defendant. We reviewed all pertinent facts including the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the Defendant. In fact, the Court heard the impact that the crime had on the victim, including the damage inflicted on the victim including the physical harm affecting the victim. At the time of sentencing, the victim stated how the Defendant's actions affected her life and how her life has changed since the incident. We considered this, along with all other evidence presented at the time of sentencing. Specifically, we noted the various members of the community who support the Defendant and that his conduct during the incident was an aberration. We noted that the Defendant is a Certified Public Accountant (CPA) and that he may lose his CPA license as a result of this conviction. Further, the Defendant will have to register under Megan's Law as a sexual offender for his lifetime. We believe that we gave proper consideration to all the information presented to the Court at the time of sentencing and that a sentence within the mitigated range was most appropriate. As such, we find no error in our sentence.

## RESTITUTION

Next, the Commonwealth believes that the restitution ordered by the Court was inadequate. It contends that we failed to consider the significant losses incurred by the victim in relation to this incident.

---

information concerning the Defendant's character and weighed that information along with the mitigating factors we set forth in the record. _Id_. Our sentence was within the guideline range and we have discretion of imposing a concurrent or consecutive sentence. _Commonwealth v. Zirkle_, 107 A.3d 127, 133 (Pa. Super. 2013). We find no error in our sentence.

5

> Restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of his sentence. *Commonwealth v. Harner*, 533 Pa. 14, 617 A.2d 702, 704 (1992). Where that statutory authority exists, however, the imposition of restitution is vested within the sound discretion of the sentencing judge. *Commonwealth v. Keenan*, 853 A.2d 381, 383 (Pa. Super. 2004); *see also id.* (stating that "[t]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's personal injury and that it is his responsibility to repair the injury as far as possible.").
>
> *Id.* "The court is required to specify the amount of restitution at sentencing, but may modify its order at any time provided that it states its reasons for any modification on the record." *Commonwealth v. Solomon*, 25 A.3d 380, 389–390 (Pa. Super. 2011), *appeal denied*, 615 Pa. 766, 40 A.3d 1236 (2012) (citing *Commonwealth v. Dietrich*, 601 Pa. 58, 970 A.2d 1131, 1135 (2009)).
>
> In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa. C.S. § 1106(a), or as a condition of probation, 42 Pa. C.S. § 9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. *See* 18 Pa. C.S.A. § 1106(a); *Harner*, 533 Pa. at 21, 617 A.2d at 704.

*Commonwealth v. Holmes*, 155 A.3d 69, 78 (Pa. Super. 2017) (emphasis in original). "In the context of criminal proceedings, an order of 'restitution is not simply an award of damages, but, rather, a sentence.' . . . An appeal from an order of restitution . . . challenges the legality, rather than the discretionary aspects, of sentencing." *Id.* (citations omitted).

> Furthermore, a
>
> court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter, or amend any order of restitution made pursuant . . ., provided, however that the court

states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

18 Pa. C.S. § 1106(c)(3). "This provision has been interpreted by our Court to permit a defendant to seek a modification or amendment of the restitution order at any time directly from the trial court." *Holmes, supra* 155 A.3d at 78 (citation omitted). However, "[r]estitution under Section 1106 for a loss suffered by a victim must be directly connected to the offender's criminal conduct." *Id.*

A review of section 1106 reveals that:

(a) Upon conviction for any crime wherein:
. . . (2) the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

(c)(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:
(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.
(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.
(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.
(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

18 Pa. C.S.A. § 1106 (a)(2); (c)(2). It is clear that the Court may review future bills for the victim as set forth in our sentence. Further, the Court considered the extent of the victim's injuries and her statement of how the incident has impacted her life. In that vein, we considered all the evidence and determined restitution within our sound discretion.

The victim indicates that she was unable to perform her job duties and she was fired when her employer found out about the incident through a news outlet. We determined, in our sound discretion, that the cost for therapy was directly related to the Defendant's conduct, however, the lost wages, especially during the time of Covid pandemic, was not shown to be directly related to the Defendant. The victim submitted a breakdown of her losses in the amount of $61,660.07, of which $704.00 was related to therapy and included a request for continued therapy treatment for an additional 36 months. The Court considered the information and determined restitution to be $704.00 based upon documents supplied to the Court. Moreover, we retained jurisdiction over restitution for submission of invoices for further therapy sessions. We find no error in our determination.

## BAIL PENDING APPEAL

The Commonwealth challenges the Court granting bail pending appeal in this matter. Pa. R. Crim. P. 521(B) states that:

**(B) After Sentencing**
(1) When the sentence imposed includes imprisonment of less than 2 years, the defendant shall have the same right to bail as before verdict, unless the judge, pursuant to paragraph (D), modifies the bail order.
(2) Except as provided in paragraph (A)(1), when the sentence imposed includes imprisonment of 2 years or more, the defendant shall not have the same right to bail as before verdict, but bail may be allowed in the discretion of the judge.
(3) When the defendant is released on bail after sentencing, the judge shall require as a condition of release that the defendant either file a post-sentence motion and perfect an appeal or, when no post-sentence motion is filed, perfect an appeal within the time permitted by law.

8

At the time of sentencing, the Defendant requested bail pending appeal and noted that at the time of the jury's verdict, the Court modified bail to $75,000.00 secured, which the Defendant subsequently posted. Although the Defendant did not have the same right to bail as before the verdict, the Court has discretion to allow bail after sentencing. During sentencing we noted that the Defendant has a zero prior record score and that his conduct on the date of the incident was an aberration and not likely to occur again. We specifically found that the Defendant was not a threat to himself or others in the community. The Defendant is gainfully employed and not otherwise a flight risk[2]. Accordingly, in our discretion, we granted the Defendant bail pending appeal. We find no error in our determination.

## MOTION FOR JUDGMENT OF ACQUITTAL

The Defendant request acquittal for his convictions on the charges of Attempted Sexual Assault, Aggravated Indecent Assault, and Indecent Assault without Consent.

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so

---

[2] At sentencing, the Commonwealth requested a surrender of the Defendant's passport, however, the Defendant advised the Court that his passport was expired and the Court prohibited the Defendant from renewing his passport as a condition of his bail pending appeal.

weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa. Super. 2017) (citation omitted).

Attempted Sexual Assault occurs when "[a] person commits an attempt, with intent to commit a specific crime, [i.e sexual assault, when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent], and he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901 (a); 18 Pa. C.S.A. § 3124.1.

Aggravated Indecent Assault without Consent requires the Commonwealth to prove that: "a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if: (1) the person does so without the complainant's consent." 18 Pa. C.S.A. § 3125 (a)(1).

Indecent Assault without Consent requires proof that a:

person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent.

18 Pa. C.S.A. § 3126 (a)(1).

In determining whether the evidence is sufficient, we must view all the evidence admitted at trial in the light most favorable to the verdict winner. If there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt the evidence is sufficient. *Commonwealth v. Baker-Myers*, 210 A.3d 1093, 1095 (Pa. Super. 2019), aff'd, 255 A.3d 223 (Pa. 2021).

During trial, the victim, R.F., testified. She stated that on the date of the incident, after consuming some beer and a shot of vodka she was feeling the effects of intoxication. [Notes of Testimony, May 9, 2022, at pp. 61-62 (hereinafter referred to as "N.T.")] After leaving the river trip, the victim was standing in the parking lot of the Shawnee Inn and she was cold. [N.T., p. 64-67] The victim wanted to go inside to get warm and the Defendant led her inside. [N.T., p. 67-68] Then she remembers the Defendant tell her that she was beautiful and trying to touch her. [N.T., p. 69] The Defendant then "came onto" her harder and kissed her. [N.T., p. 70] After that the victim lost consciousness. [N.T., p. 70] She awoke to the Defendant biting her nipple and she immediately pushed him away. [N.T., p. 70] The Defendant was pulling her and pulled her down on top of him. [N.T., p. 72] Although she was trying to pull away, the victim was being held down by her shoulders and arms. [N.T., p. 72] At some point the victim's top and bottom of her bathing suit were off and the Defendant was touching her in her vagina and telling her to relax. [N.T., p. 73] The Defendant penetrated her vagina with his finger. [N.T., p. 73] He was rubbing himself on her and actually touching her vagina. [N.T., p. 74] At that point the victim hit her head on the wall behind the Defendant and lost consciousness. [N.T., p. 74]

The next thing she heard was Nicole screaming his (Defendant's) name. [N.T., p. 74] At this point, the victim was on top of the Defendant. [N.T., p. 75] The victim testified that she was very upset and she felt very-violated. [N.T., p. 83-84] She stated that she was not aware of what happened and later that evening she attempted to listen to a conversation between Amanda and Nicole to try to get insight as to what happened. [N.T., p. 83]

When we review this testimony, we find that the Commonwealth, as the verdict winner, has established sufficient evidence to enable the fact-finder to find every element of the charges of for Attempted Sexual Assault, Aggravated Indecent Assault, and Indecent Assault without Consent beyond a reasonable doubt. The evidence demonstrates that the Defendant held the victim down as he was touching her vagina and telling her to relax while the victim was attempting to break free. We find this is sufficient to enable the fact-finder to find the crime of Attempted Sexual Assault beyond a reasonable doubt.

Likewise, Aggravated Indecent Assault was proven beyond a reasonable doubt. The victim testified that she was being held down by the Defendant and he used his free hand to penetrate her vagina. The Defendant acknowledged himself that he penetrated her vagina with his finger. [Notes of Testimony, May 11, 2022, at pp. 177-178 (hereinafter referred to as "N.T. 5/11/22")] This evidence is sufficient for the jury to find, beyond a reasonable doubt, each element of Aggravated Indecent Assault. Although the Defendant claims that he did not know or subjectively appreciate the victim's lack of consent, the jury heard his testimony and determined that the victim did

12

not consent. The jury could easily conclude, based on the victim's testimony, that she did not consent and that the Defendant knew or failed to appreciate that she did not consent. Similarly, this evidence supports the verdict of Indecent Assault without Consent. The Defendant also attacks the victim's testimony by arguing that her testimony was contradicted by Nicole Carney's and Amanda Glidden's testimony. The jury was free to believe any or all of the witnesses' testimony. *Commonwealth v. Faulk*, 928 A.2d 1061 (Pa. Super. 2007)

The Defendant cites the case of *Commonwealth v. DeBerry*, 409 A.2d 87 (Pa. Super. 1979) for the proposition that the Commonwealth's evidence was insufficient to find that he knew or subjectively disregarded the non-consent of the victim. In *DeBerry*, the issue was whether the defendant knew that the victim was suffering from mental disease or defect which rendered her incapable of appraising the nature of her conduct. That is not the issue in this case. The Defendant argues that the Commonwealth must prove that he had knowledge of her condition and he was unaware of her non-consent. However, the ruling in *DeBerry* was limited to the whether the defendant knew that the victim suffered from mental disease or defect.

As we set forth above, the jury may infer the non-consent from the victim's testimony and the attendant circumstances, especially where the victim testified that she was trying to get away. [N.T., p.71] The Defendant testified regarding his impression of the victim and the incident. The jury also heard the testimony of Amanda Glidden and Nicole Carney. After all of the evidence was heard, the jury determined the facts in this case. The issues the Defendant now complains of were presented to the jury and we find

that the record supports the jury's verdict. We therefore deny the Defendant's Motion for Judgment of Acquittal.

**MOTION FOR NEW TRIAL ON COUNTS 2, 3 and 5**

The Defendant seeks a new trial on counts 2, 3 and 5, Attempted Sexual Assault, Aggravated Indecent Assault, and Indecent Assault without Consent. He argues that the requested jury instruction on reasonable mistake of fact regarding the victim's alleged unconsciousness and lack of consent were denied and requires a new trial. We disagree.

In reviewing a jury charge, we must determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." _Commonwealth v. Scott_, 73 A.3d 599, 602 (Pa. Super. 2013) (citation omitted). "In so doing, we must view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge." _Id_.

> We review jury instructions for a clear abuse of discretion or an error of law." **_Commonwealth v. Hall_**, 199 A.3d 954, 963 (Pa.Super. 2018). We consider the charge as a whole to determine whether it "is inadequate, not clear, or has a tendency to mislead or confuse a material issue." **_Id._** A trial court need not give an instruction as to a particular element, offense, or defense where the evidence would not substantiate a jury finding on that point. **_Id._**

_Commonwealth v. Harbold_, 260 A.3d 134 (Pa. Super. 2021), appeal denied, 270 A.3d 428 (Pa. 2021) (emphasis in original).

> The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.' In reviewing a jury charge, we are to determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." _Commonwealth v. Brown_, 911 A.2d 576, 582–83

14

(Pa.Super.2006). In so doing, we must view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge. *Commonwealth v. Hamilton*, 766 A.2d 874, 878 (Pa.Super.2001). "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Id.* It is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." *Brown*, 911 A.2d at 583.

*Scott*, *supra* 73 A.3d at 602 (citation in original).

Instantly, the Defendant requested an instruction on mistake of fact and he acknowledges that the Court granted the instruction as to count 1, Criminal Attempt-Rape of Unconscious Victim, but denied the request regarding lack of consent as to counts 2, 3 and 5. At a charging conference held before the Court, the defense argued that the Commonwealth needed to prove, beyond a reasonable doubt, that the Defendant had knowledge or at a minimum recklessness on his part that the victim did not consent. [Notes of Testimony, May 11, 2022, at p. 249] He requested an instruction on Ignorance or Mistake, which the Court requested to be provided by counsel. The Court read the standard instruction on Ignorance or Mistake and instructed the jury that this instruction applies to Count 1 only. [Notes of Testimony, May 12, 2022, at p. 90] When we read the instruction as a whole, we are satisfied that all of the instructions adequately and clearly presents the law to the jury. The Court advised the jury that their recollection of the facts controls and that in order to find the Defendant guilty, they needed to find all of the elements of each crime beyond a reasonable doubt. We do not believe that our

15

instruction mislead, or confused the jury nor did it prejudiced the Defendant. We find

that our instructions to the jury were proper and we find no error here.

**THE COURT'S FAILURE TO ALLOW EVIDENCE RELEVANT TO CONSENT UNDER PENNSYLVANIA'S RAPE SHIELD LAW**

The Defendant seeks a new trial because the Court disallowed certain evidence to

be introduced during trial due to the Rape Shield law[3]. 18 Pa. C.S.A. §3104 (a) states:

> **(a) General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

"The trial court must engage in a four-part inquiry if a defendant seeks admission of a

victim's past sexual conduct under either the statutory exception or a constitutional

exception to the Rape Shield Law." *Commonwealth v. Palmore*, 195 A.3d 291, 295 (Pa.

Super. 2018). Once notice is provided by the defendant, we must determine if the

proffered reason for introduction of past sexual conduct evidence is mere speculation or

conjecture. *Id.* (citation omitted).

> If the proffered evidence is not speculation or conjecture, the trial court must conduct an *in camera* hearing. . . . At the conclusion of that hearing [t]he trial court must determine (1) if the evidence sought to be admitted is relevant to the accused's defense, (2) whether the evidence sought to be admitted is merely cumulative of evidence otherwise admissible at trial, and (3) whether the evidence

---

[3] 18 Pa. C.S.A. §3104

16

which the accused wishes to introduce at trial is more probative than prejudicial.

*Id.* We held a hearing on this issue because we did not find that the evidence constituted speculation or conjecture. The proffer by the defense consisted of an incident which occurred in 2013 where the Defendant was on a Skype call with Nicole and the victim while allegedly intoxicated began to flash her breasts and pull down her pants while facing the screen. The victim proposed a "threesome" when the Defendant next visited Nicole. After the hearing, we determined that the incident was too remote in time and that it included Nicole for a "threesome" and, therefore, impermissibly included third parties. Additionally, the defense sought to introduce evidence of a prior river trip in which the victim flashed her breasts at other boaters in an attempt to obtain beer. Similarly, we denied the proffer as impermissibly included third parties. Although the Defendant complains that the Commonwealth opened the door by inquiring about the Defendant asking the victim to expose her breasts on the date of the incident, the questions surrounded the actions of the Defendant and not third parties. We find no abuse of discretion in our ruling.

## 404(B) EVIDENCE

Next, the Defendant complains that we failed to exclude the "parking lot" incident in violation of Pa. R.E. 404(b). The incident involved the Defendant going into the parking lot after the alleged assault of the victim and yelling at Nicole and being forceful with her. The defense argued that it was irrelevant and even if relevant that evidence would result in prejudice to the Defendant. The defense contends that the

17

Commonwealth failed to specify the nature of the parking lot incident and alleged that the incident, like the shower incident with the victim, was introduced to show the Defendant's propensity to assault women.

The Defendant articulates that the incidents were dissimilar and the Commonwealth's failure to include the specific nature of the evidence in writing, as required by the Criminal Rules, was harmful to the defense and requires a new trial. The parking lot incident was close in time to the incident involving the victim and its context directly related to the victim and the Defendant. The evidence sought to be excluded involved the Defendant's action after Nicole discovered him with the victim in the shower. The evidence was not admitted under Pa. R.E. 404(b). The Commonwealth filed a Notice of Prior Bad Acts (Notice) on May 5, 2022, which included a confrontation between the Defendant and Amanda Glidden about her involvement following the assault in the locker room. The Notice did not include the parking lot incident.

It is clear that all relevant evidence is admissible at trial and evidence that is not relevant is not admissible. Pa. R.E. 402. In regards to the parking lot incident, we determined that the evidence was relevant and that "its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa. R.E. 403. In addition, the incident was witnessed by Amanda Glidden and several others. The Court determined that the evidence was relevant and the probative value outweighed any prejudicial effect on the Defendant. As such, we find no error in our ruling on this issue.

**FAILURE TO GRANT DEFENDANT'S MOTION TO REQUIRE A REPORT BY THE COMMONWEALTH'S 5920 EXPERT**

> Our Supreme Court has held that "[e]xpert testimony on relevant psychological factors ... does not directly speak to whether a particular witness was untrustworthy, or even unreliable, as the expert is not rendering an opinion on whether a specific witness [testified accurately.] ... Rather, such testimony teaches—it provides jurors with education by which they assess for themselves the witness's credibility."

*Commonwealth v. Kelley*, 206 A.3d 551, 561 (Pa. Super. 2019) (citation omitted).

Instantly, the testimony of the expert during trial pertained to general dynamics of sexual assaults and did not discuss a particular victim or the facts of the case. As such, the expert had not prepared a report and the testimony provided the jurors with a background to assess the victim's credibility. We find no error which requires a new trial on this issue.

**VERDICTS ON COUNT 2, 3, 4, AND 5 WERE AGAINST THE WEIGHT OF THE EVIDENCE**

"A challenge to the weight of the evidence, in contrast to a challenge to the sufficiency of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Smith*, 853 A.2d 1020, 1027 (Pa. Super. 2004) [citing *Commonwealth v. Bennett*, 827 A.2d 469 (Pa. Super 2003)]. An allegation that the verdict is contrary to the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Foster*, 764 A.2d 1076, 1083 (Pa. Super 2000). Therefore, a court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Smith, supra*. We must determine that notwithstanding all the facts, certain facts are clearly of greater weight and that to ignore them or to give them

equal weight with all the other facts is to deny justice. *Id*, citation omitted. Moreover, a new trial should not be granted because of a mere conflict in the testimony or because a different conclusion may be reached by the fact finder on the same set of facts. *Id*. "Stated another way, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence received as to shock one's sense of justice." *Foster*, *supra* (citation omitted).

The Defendant challenges the verdict as a conflict of evidence between the testimony of the victim and Amanda Glidden and Nicole Carney.

The evidence in this case shows that the Defendant had physically pulled the victim into the area of the showers. The testimony of the victim was compelling and the jury chose not to believe the conflicting testimony of Ms. Glidden and Mrs. Carney. This Court observed the entire trial and we find that the jury correctly determined the facts in this case. Further, the verdict is not so contrary to the evidence which would shock one's sense of justice. We find no error here.

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : **NO. 2644 CRIM 2019** |
| | : |
| | : |
| **vs.** | : |
| | : |
| **DANIEL J. CARNEY,** | : |
| | : |
| **Defendant** | : **POST-SENTENCE MOTIONS** |

**O R D E R**

**AND NOW,** this **4th** day of November 2022, after hearing, it is hereby **ORDERED** that the Commonwealth's Motion for Reconsideration of Sentence and For Reconsideration of Post-Sentence Bail/Release and Defendant's Post Sentence Motion for Judgment of Acquittal and New Trial are **DENIED**. Pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(4), Defendant is notified of the following:

(a) the right to appeal to the Superior Court of Pennsylvania within thirty (30) days of the date of this Order;

(b) the right to assistance of counsel in the preparation of the appeal;

(c) the rights, if indigent, to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Rule 122; and

(d) the qualified right to bail under Rule 521(B).

**BY THE COURT:**

**STEPHEN M. HIGGINS, Judge**

cc: ADA
James Swetz, Esquire
SMH 2022-0027

21